29 C.C.P.A.(Patents)

## In re MULHOLLAND.

Patent Appeal No. 4630.

Court of Customs and Patent Appeals.

July 6, 1942.

Ernest F. Mechlin, of Washington, D. C. (Ritter, Mechlin & Muir, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Judge.

All the claims of appellant's application for a patent relating to an abrading or polishing machine were rejected by the Primary Examiner of the United States Patent Office for reasons hereinafter stated, and upon appeal, the Board of Appeals affirmed the examiner's rejection upon some of the grounds assigned by the examiner. Appellant has appealed here for a review and revision of the board's decision.

The references relied upon are:

Poole, 194,879, Sep. 4, 1877
Peirce, 876,087, Jan. 7, 1908
Landis, 1,015,567, Jan. 23, 1912
Sandorff, 2,115,217, Apr. 26, 1938.

Claims 4 and 8 are regarded as illustrative and follow:

"4. An abrading machine including a roll having an abrading surface, a work supporting roll positioned beneath said abrading roll, a sheet interposed between said rolls, and coolant means adapted to supply coolant to said sheet and on opposite sides of the area of contact of said sheet and abrading roll, said means including a plurality of connected nozzles each extending substantially in a horizontal direction and positioned at an angle to the direction of movement of the sheet beneath said roll for causing the coolant discharged therefrom under pressure to flow at an angle to the longitudinal axis of said roll, said connecting means being also adapted to overlie the discharged coolant for maintaining the same in a predetermined path."

"8. An abrading machine including a roll having a continuous abrading surface, a pivotally mounted work supporting roll positioned beneath said abrading roll, a coolant chamber positioned above a horizontal plane tangent to the lowermost surface of the abrading roll, a portion of said chamber extending toward and closely adjacent the surface of said last named roll, a plurality of nozzles housed within said chamber, each of said nozzles being positioned to project a coolant from said chamber toward the lowermost portion of said abrading roll and at an angle of less than ninety degrees to the axis thereof, and means for supplying coolant under pressure to said chamber."

Appellant's invention relates to a sheet polishing machine having a long abrading drum, serviced with abrading material, for polishing such material as thin sheets of metal which are used for making automobile bodies. It comprises means for supplying coolant to the abrading member to prevent excessive heat when the piece of metal is being worked. Appellant points out that sheets of metal, before being ground and finished, contain scale and rough or uneven portions and that in the prior art the work piece had to be passed through the conventional machines many times in a slow and expensive process. He asserts that the cost of having steel plates finished under the ordinary methods was $600 a ton and that by the use of his machine the cost has been reduced to $30 a ton. Regardless of the accuracy of this statement, it is obvious that appellant's device has eliminated the expenditure of much time and money.

The instant application is a continuation-in-part of a previous application. The invention relates particularly to a means for supplying to sheet metal which is

being ground or polished, a coolant (water) in sufficient volume to prevent warping or buckling of the sheet on account of the heat engendered by the grinding. The coolant distributing device is so arranged that an abundant supply of water, in wedge-shaped reservoirs on each side of the grinding roll, is passed to the sheet of metal being ground and to the roll, at the point of contact in the directions as are stated in the claims.

The examiner rejected claims 4 and 5 as being "informal claims because they claim the work piece as part of the combination which was held to be improper in In re Hodler, Cust. & Pat. App., 73 F.2d 507, and In re Smith, Cust. & Pat. App., 36 F. 2d 302."

Claims 4 to 10 were rejected as "presenting nothing patentable over the patent to Sandorff in view of either of patents to Poole or Landis."

Claims 6 and 7 were rejected as "being misleading and indefinite."

Claim 11 was rejected as "defining nothing patentable over the patent to Sandorff in view of either of patents to Poole or Landis and Pierce [Peirce]."

On appeal to the Board of Appeals, the board said:

"* * * It is our view that it would not be inventive to arrange the nozzles in Sandorff so that they will direct the water at an acute angle to the axis of the roll in view of Landis or Poole. These two patents also teach the use of nozzles at opposite sides of the roll. The Peirce patent is also pertinent."

The board affirmed the examiner's rejection of claims 4 and 5 as being in improper form.

The rejection of claims 6 and 7 upon the ground of being indefinite was disapproved by the board.

In order that our discussion of applicant's device and the references may be more clearly understood, we here reproduce drawings from the instant application and from each of the references cited.

Applicant's device.

Poole.

Peirce Fig. 2.

Landis Fig. 1

864

**Sandorff Figs. 1 and 2.**

The patent to Poole, dated September 4, 1877, is for a stone-grinding machine. It shows water being applied to the surface of the grinding wheel on each side. The patentee states:

"It is essential that a plentiful supply of water should be directed, preferably at both the front and rear of the wheel, to that part of the periphery of the same which acts on the stone—hence the pipes x, which terminate in nozzles turned in the proper direction, and which are carried by the slide G, so that whatever may be the position of the wheel, as determined by the adjustment of the slides, the jets of water will always be directed to the proper points.

The Peirce invention relates to a stone-cutting machine. In his drawing, Fig. 2, Peirce shows three nozzles which place the coolant on the periphery of the grinding wheel, one against each edge and one against the middle. He emphasizes that a "copious supply of water should be introduced at the point of contact between the stone and the cutting wheel." He also states that "the several nozzles may be combined or divided in any way which will secure the desired number and direction of jets or streams of water."

The Landis patent discloses an elaborate grinding machine. Landis suggests that water "be discharged adjacent to the grinding wheel onto the work in the usual manner." He has two jets of water, one on each side of the grinding wheel.

The Sandorff patent relates to a polishing machine for polishing metal sheets, and more particularly to improvements in the polishing or grinding wheel and the work supporting roll. Sandorff's drawing shows a series of nozzles positioned on one side of the grinding wheel. In his specification Sandorff states:

"A suitable conduit 16 is provided to be used in conjunction with the polishing wheel 10 so as to discharge a fluid coolant, such as water, from the nozzles 17 into the polishing zone of the polishing wheel and the work."

It is the position of the board that claims 4 and 5 were properly rejected as being informal since they include the piece worked upon. We agree with this ground of rejection of claims 4 and 5.

The board concluded that it would not be inventive, in view of Poole or Landis, to arrange the nozzles of Sandorff (Sandorff having wedge-shaped nozzles which

direct the water at an angle of 90° to the axis of the roll) so that water would be directed at an acute angle to the axis of the roll. It stated that Poole and Landis both taught the use of nozzles at opposite sides of the roll and the directing of the water parallel with the axis of the roll.

We are of the opinion that it did require invention to produce appellant's structure. Unquestionably, it is a great improvement in the art. While it is proper to combine references in rejecting claims, is usually becomes a question as to whether the prior art would suggest to one skilled in the art the doing of the thing that the applicant has done. Ofttimes it is obvious to one skilled in the art, or even to a layman, to make a minor improvement in view of what is shown in the prior art or of that which is of common knowledge.

In the present instance applicant's problem was not the same problem that confronted Poole and Peirce. They were concerned with working on stone. There was no warping or buckling of heated thin metal in their problem. Probably they both sought to eliminate functional heat to some extent, but they sought the removal of the ground-off particles of stone, so as to facilitate the grinding or cutting of the stone.

On the other hand, the serious problem of the applicant was to polish metal sheets with much greater speed than had theretofore been possible, and at the same time, to prevent heat-warping of the sheets. He achieved this desirable end by grinding off a greater quantity of metal from a sheet in a single passage through the machine and by constructing his coolant device in such a manner that the intense heat generated by the grinding was absorbed by the coolant. We do not think that one skilled in the grinding machine art who was confronted with applicant's problem would be led, merely by knowing what Poole, Landis, and Sandorff had done, to produce the elaborate and effective working device which the applicant has produced. Peirce does nothing more (that is pertinent here) than to place the coolant on the grinding wheel at three different angles.

The applicant has ingeniously arranged that more water under high pressure will be immediately available at the desired points and has so constructed his device

that the jets of water from a plurality of nozzles will be directed at an angle both to the horizontal plane of the sheet and to the longitudinal axis of the grinding drum. He has, by his system, increased the velocity of the water and improved upon the manner in which the prior art functioned to cool the workpiece and to remove the debris therefrom.

Peirce is the only patent cited that shows directing currents of water from a plurality of nozzles at different angles. Peirce does not disclose any idea of causing the coolant to move on both sides of the grinding roll so as to dissipate the heat. The water in his device is thrown onto the cutting wheel. Nothing in Peirce would suggest to one skilled in the art the doing of what appellant has done.

Before the board, appellant filed an affidavit showing the successful operation of his device upon plate glass, whereupon the board remanded the case to the examiner. The examiner considered the affidavit and criticized it by stating that it contained matters of opinion concerning patentability; that it discussed a device which the affiant had in mind but to which the claims are not limited; that a test on glass was not pertinent to metal polishing; and that the affidavit did not disclose "the procedure or the mechanism involved."

We have examined the affidavit. It shows that highly successful results were obtained by "utilizing the mechanism and coolant chambers disclosed in the above-entitled [instant] application" in polishing the surface of glass; that this was a new procedure in the art; and that the grinding was accomplished successfully without any fracture of the glass, which is a non-conductor of heat. While the affidavit is not controlling, it certainly is some evidence of the increased cooling effectiveness of appellant's device. If the device will perform what the affidavit says it will on glass, which heats and cracks easily, it is reasonable to assume that it will serve a useful purpose, not known to the prior art, in eliminating frictional heat from metal grinding operations.

For reasons stated, we are of the opinion that the board was in error in rejecting the claims on the grounds given in its decision, except as to claims 4 and 5, which were rejected on the ground of informality. Its decision is therefore affirmed as to claims

4 and 5 and reversed as to the remaining claims.